# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GRUBB & ELLIS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10-cv-5068 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| HUNTINGTON HOFFMAN, LLC ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Grubb & Ellis Company ("Grubb & Ellis") filed a two-count complaint against Huntington Hoffman, LLC ("Huntington") seeking payment of commission fees that relate to the leasing of real property owned by Huntington.[1] Huntington has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) on the grounds that Grubb & Ellis failed to join HSA Commercial, Inc. ("HSA") as required by Rule 19. In the alternative, Huntington requests that the court order HSA to be joined as either a party plaintiff or a party defendant. For the following reasons, Huntington's motion [#11] is denied.

---

[1] Grubb & Ellis is a Delaware corporation with its principal place of business in California. According to the complaint, Huntington is a limited liability company with its principal place of business in Illinois. Huntington has one member, Steven Maranto, who is a subject of the United Kingdom. The amount in controversy exceeds $75,000. Therefore this court has diversity jurisdiction under 28 U.S.C. § 1332(a). Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 because Huntington resides in this district and a substantial part of the events giving rise to Grubb & Ellis's claim took place in this district.

# BACKGROUND[2]

Huntington is the owner of real property located at 1600 Algonquin Road in Hoffman Estates, Illinois. On November 2, 2006, Huntington and Grubb & Ellis entered into a written agreement that gave Grubb & Ellis the exclusive right to lease or sublease the property from November 15, 2006 through May 15, 2007. Compl. Ex. A. The agreement contains a Commission Schedule that provides that Grubb & Ellis will receive a commission of 6% of the total value of the initial lease term, limited to the first fifteen years. *Id.* at 2. One half of the leasing commission is due upon execution of the lease and one half is due upon the first payment of rent. *Id.* The Commission Schedule further states that "[i]n the occurrence when the lessee is represented by a broker other than the listing broker(s), then the project salesperson(s) and the non-project salesperson(s) will share the 6% commission per the terms of a separate commission agreement." *Id.* After the leasing agreement expired in May of 2007, Grubb & Ellis continued to market the property with Huntington's encouragement and authorization.

The parties entered into a second exclusive leasing agreement in July of 2007. Compl. Ex. B. The second agreement granted Grubb & Ellis the exclusive right to lease the property from July 23, 2007 through January 31, 2008. *Id.* at 1. Like the first agreement, the second agreement includes a Commission Schedule that provides that Grubb & Ellis will receive a 6% commission and that the commission will be shared if another broker represents the lessee. *Id.* at 2.

---

[2] Unless otherwise noted, the following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion. *See Davis Cos.* v. *Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). The background contains references to exhibits attached to the complaint and, thus, are a part thereof. *See* Fed. R. Civ. P. 10(c). In ruling on this motion, the court also considers the pleadings and exhibits relevant to the issue of HSA's joinder. *See Davis Cos.*, 268 F.3d at 480 n.4.

Sometime in August of 2007, Grubb & Ellis entered into a co-brokerage agreement with HSA. Marschall Aff. ¶ 5; Pl.'s Resp. Ex. 2.[3] The brokerage agreement provides, in relevant part, that "[i]n the event that Tenant or a related entity should execute a lease, Grubb & Ellis will pay or cause the Owner of the property to pay a commission to HSA in the amount equal to three percent (3%) of the lease rate of the initial term, limited to 15 years. Commission shall be paid 50% upon lease execution and 50% upon the earlier of rent commencement or the tenant opening for business." Pl.'s Resp. Ex. 2.

In September of 2007, National City Bank ("National City") gave Grubb & Ellis a letter of intent to lease a portion of Huntington's property. National City provided a revised letter of intent in January of 2008.[4] After the second leasing agreement expired that same month, Huntington encouraged and authorized Grubb & Ellis to assist in negotiating a lease with National City and led Grubb & Ellis to believe that it would receive a commission if National City signed the lease.

National City entered into a lease with Huntington in October of 2008 and began to pay rent to Huntington in March of 2010. In the lease between National City and Huntington, both parties represented that HSA, rather than Grubb & Ellis, was the real estate broker that assisted in procuring the lease. Specifically, Section 16.16 of the lease, titled "No Broker," states:

---

[3] Grubb & Ellis has submitted a copy of the co-brokerage agreement with HSA that does not include a date next to the signature line. Kevin Marschall, the Associate Director of the Corporate Services Group in Grubb & Ellis's Chicago office, has submitted an affidavit in which he avers that the agreement was entered into in August of 2007. Marschall Aff. ¶ 6. Marschall further states that the agreement was kept in the ordinary course of Grubb & Ellis's business. *Id.* Marschall's signature does not appear on the agreement. The agreement, however, takes the form of a letter to Marschall, from the Vice President of HSA, and the date "August 13, 2007" appears in the letter's salutation. Because Huntington has not challenged Marschall's assertion regarding the date of execution of the co-brokerage agreement and the text of the agreement corroborates Marschall's assertion, the court accepts the August 2007 date for the purpose of resolving the pending motion.

[4] The complaint does not state whether this second letter of intent was provided to Grubb & Ellis, HSA, or Huntington.

"Landlord and Tenant represent and warrant that they have not dealt with any real estate agent or broker in connection with this transaction except HSA Commercial, Inc. whose fees shall be paid by Landlord pursuant to a separate agreement; and each party agrees to indemnify and save the other harmless from and against all liability, damage, loss, cost and expense incurred by reason of the indemnitor's breach of said representation and warranty." Pl.'s Resp. Ex. 3, at 19.[5]

In January of 2010, before National City started paying rent for the property, HSA sent an invoice to Grubb & Ellis demanding payment in the amount of $63,574.22. This amount equals 3% of the total value of the first fifteen years of National City's initial lease term. The invoice asserts that Grubb & Ellis must pay $31,787.11 upon receipt of the invoice and $31,787.11 upon rent commencement. Pl.'s Resp. Ex. 4. HSA sent a similar invoice to Huntington on February 1, 2010. HSA's invoice to Huntington states that Huntington must pay $31,787.11 upon receipt of the invoice and $31,787.11 upon rent commencement. Def.'s Reply Ex. 1. On February 10, 2010, HSA asserted a commercial real estate broker lien against Huntington's property. Def.'s Mot. to Dismiss Ex. 1. The lien asserts that Huntington "made a written contract . . . with [HSA] for the purposes of leasing an interest in the [Hoffman Estates property]" and that HSA is entitled to a commission of $63,574.22 pursuant to this contract. *Id.* ¶¶ 2–5.[6]

Grubb & Ellis, for its part, alleges that Huntington was required to pay Grubb & Ellis $63,574.22 in October 2008, when National City signed the lease, and $63,574.22 in March of 2010, when rent payments commenced. Grubb & Ellis alleges that Huntington was required to pay the commission based on the existence of a contract implied in fact (Count I of the

---

[5] Neither party has submitted a copy of the agreement between HSA and Huntington that is referenced in National City's lease.

[6] Neither party has submitted a copy of the written contract that is referenced in the real estate broker's lien.

4

complaint) or, in the alternative, because application of the doctrine of *quantum meruit* warrants payment of the commission (Count II).

## LEGAL STANDARD

The court conducts a two-step analysis in determining whether a complaint must be dismissed for failure to join a party as required by Rule 19. First, the court determines whether the party is a "required" party under Rule 19(a). *Askew* v. *Sheriff of Cook County, Ill.*, 568 F.3d 632, 635 (7th Cir. 2009). Rule 19(a) provides that an absent party "must" be joined if joinder is feasible and (1) the court cannot afford complete relief among the existing parties in the party's absence, (2) the absent party's ability to protect an interest relating to the subject of the action will be impaired, or (3) an existing party would be subject to a substantial risk of multiple or inconsistent obligations if the absent party is not joined. Fed. R. Civ. P. 19(a)(1)(A)–(B). Second, if the court determines that the party meets the criteria set forth in Rule 19(a)(1) but that joinder is not feasible, it must consider whether, under Rule 19(b), "equity and good conscience" require that the litigation should proceed without the absent party. *Davis Cos.* v. *Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (citing *Thomas* v. *United States*, 189 F.3d 662, 667 (7th Cir. 1999)); *see also Askew*, 568 F.3d at 635. The court will consider the prejudice to the existing parties, the adequacy of a judgment that would be rendered without the absent party, and whether the plaintiff would have an adequate remedy if the action were dismissed. Fed. R. Civ. P. 19(b)(1)–(4). "If there is no way to structure a judgment in the absence of the party that will protect both the party's rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal . . . under Federal Rule of Civil Procedure 12(b)(7)." *Davis Cos.*, 268 F.3d at 481 (quoting *Thomas*, 189 F.3d at 667). The moving party has the burden of showing failure to join a required and indispensable party. *See, e.g.*, *Rotec Indus., Inc.* v. *Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006); *Hous.*

5

*Auth. Risk Retention Group, Inc.* v. *Chicago Hous. Auth.*, No. 02 C 4474, 2002 WL 22299353, at *1 (N.D. Ill. Oct. 6, 2003).

## DISCUSSION

I. **Whether HSA is a Required Party Under Rule 19(a)**

Huntington asserts that HSA is a required party under Rule 19(a) because Huntington will be exposed to a risk of multiple obligations if HSA is not joined in the present action, HSA's ability to protect its own interest in the claimed commission would be impaired, and the court cannot provide relief among Huntington and Grubb & Ellis if HSA is not joined. Def.'s Mot. to Dismiss ¶¶ 9–11. None of these contentions is persuasive.

Federal Rule 19(a)(1)(B)(ii) provides that an entity that "claims an interest relating to the subject of the action" must be joined if its absence "may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." The first requirement for joinder under Rule 19(a)(1)(B)(ii) is that the absent party must have claimed an interest in the subject of the lawsuit; the mere risk of subsequent litigation does not suffice. *See Davis Cos.*, 268 F.3d at 483–84 (joinder not required where absent party "denie[d] an interest relating to the subject matter of [the] lawsuit"); *Morgan Guar. Trust Co. of New York* v. *Martin*, 466 F.2d 593, 597–98 (7th Cir. 1972) (joinder not required where absent investment broker "never indicated any interest" in the money that was the subject of the contract dispute); *Rhone-Poulenc, Inc.* v. *Int'l Ins. Co.*, No. 94 C 3303, 1996 WL 435180, at *7–8 (N.D. Ill. Jul. 31, 1996) (no joinder required where the plaintiff "convincingly argue[d] that the absent . . . [insurance] carriers do not claim an interest in the action because they have disclaimed coverage" of the insured properties). Second, one of the existing parties—usually a defendant—must be subject to a risk of multiple or "inconsistent obligations." "Inconsistent obligations" are not the same as inconsistent adjudications or results. *Delgado* v. *Plaza Las*

*Americas*, 139 F.3d 1, 3 (1st Cir. 1998); *accord Robertshaw Controls Co.* v. *Therm-O-Disc, Inc.*, No. 09 C 1816, 2009 WL 4043083, at *2 (N.D. Ill. Nov. 20, 2009); *Sears, Roebuck & Co.* v. *Nat'l Logistics Corp.*, No. 05 C 2266, 2006 WL 87597, at *3 (N.D. Ill. Jan. 9, 2006). "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Delgado*, 139 F.3d at 3. Courts in this district have therefore required joinder where there is a danger of conflicting judgments regarding property ownership or where two different courts might require an employer to give the same job to two different unions. S*ee Moore* v. *Ashland Oil, Inc.*, 901 F.2d 1445, 1448 (7th Cir. 1990); *Teamster Loc. Union No. 714* v. *GES Exposition Servs., Inc.*, 494 F. Supp. 2d 970, 974 (N.D. Ill. 2007). Inconsistent adjudications, in contrast, "occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Delgado*, 139 F.3d at 3. The risk of inconsistent adjudications does not warrant joinder under Rule 19(a)(1)(B)(ii). *Id.*; *see also* 4 James Wm. Moore *et al.*, *Moore's Federal Practice* § 19.03[4][d] ("It is important to note that the 'multiple liability' clause compels joinder of an absentee to avoid inconsistent *obligations*, and not to avoid inconsistent adjudications. . . . Sequential claims for damages do not inflict the relevant harm [under Rule 19(a)(1)(B)(ii)]."); *Boone* v. *Gen. Motors Acceptance*, 682 F.2d 552, 554 (5th Cir. 1982) (multiple litigations are not the same as inconsistent obligations).

In this case, Grubb & Ellis and HSA have both claimed an interest in commission fees owed by Huntington; however the claims have been asserted pursuant to two separate relationships with Huntington. Grubb & Ellis's claim for damages is premised upon an implied contract between Grubb & Ellis and Huntington or, in the alternative, upon Huntington's encouragement and use of Grubb & Ellis's brokerage services. Grubb & Ellis's complaint does not allege any facts regarding HSA. HSA, on the other hand, cites a separate written contract

7

with Huntington as the basis for its commercial broker's lien against Huntington.[7] The representations made by Huntington and National City in the October 2008 lease support the conclusion that any agreement between Huntington and HSA was distinct from the alleged agreement between Huntington and Grubb & Ellis. Separate adjudications of the two brokers' claims will not result in the imposition of inconsistent obligations upon Huntington because Huntington's obligations to Grubb & Ellis are distinct from its obligations to HSA, and the possible claims would involve different agreements with two different parties. Huntington can be ordered to pay a broker's commission to Grubb & Ellis as well as HSA, if in fact that is what its agreements with both parties require. In short, the situation faced by Huntington is one involving a risk of multiple adjudications, not multiple obligations.

Moreover, the Seventh Circuit has emphasized that joinder of an absent party is not required where "a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue." *Davis Cos.*, 268 F.3d at 484 (quoting 7 Charles A. Wright, Arthur R. Miller, Mary K. Kane, *Fed. Practice and Procedure Civil* § 1613, at 197 (2001)). Courts have accordingly been reluctant to require joinder of an absent party that does not have any rights under the agreement that is at issue in the dispute. *See Leaf Funding, Inc.* v. *PMI Sports, Inc.*, No. 07 C 4571, 2008 WL 4717166, at *5 (N.D. Ill.

---

[7] Huntington, in its reply brief, asserts that HSA did not have a written agreement with Huntington. Def.'s Reply at 2–3. This assertion contradicts the signed and sworn statements contained in HSA's broker's lien, which was the sole document submitted in support of Huntington's motion to dismiss, as well as Section 16.16 of the National City lease. The court does not decide here whether a written agreement existed between HSA and Huntington because the documents make clear that HSA's claim for a commission is based upon an agreement between Huntington and HSA that is separate from the alleged agreement between Huntington and Grubb & Ellis. Moreover, if indeed there is a dispute regarding the existence of a written agreement between HSA and Huntington, the existence of such a dispute would weigh against Huntington's motion from an equitable standpoint. *See* Fed. R. Civ. P. 19(b)(1) (if joinder is not feasible, the court is to consider the extent to which a judgment rendered in the party's absence would prejudice the absent party or existing parties). Huntington is less likely to be prejudiced by a judgment rendered in HSA's absence if the basis for HSA's lien is invalid.

May 29, 2008) ("[Defendant's] obligations to [plaintiff] under the Leases are distinct from its obligations to [the absent parties] under the Service Agreement. There is no risk of inconsistent obligations because any holding by this court regarding [defendant's] liability to [plaintiff] would have no implications for [defendant's] liability to [the absent party]."); *Rotec Indus.*, 436 F. Supp. 2d at 938 ("[A] determination of [the parties'] contractual rights under the Lease in this suit would not impair [the absent party's] or [defendant's] rights vis-à-vis each other."); *see also Burger King* v. *Am. Nat'l Bank*, 119 F.R.D. 672, 675 (N.D. Ill. 1988) ("If the absent party has a legally protected interest in the subject matter of the action – *i.e.*, he is a party to a contract at issue – he falls squarely within the terms of Rule 19(a)(2). . . . If, on the other hand, he has only a financial interest, or [an] interest of convenience, in the action . . . he falls outside the Rule's bounds." (internal quotations and citations omitted)). Huntington has not asserted that HSA had any rights pursuant to the agreement alleged by Grubb & Ellis in its complaint. Nor is there any indication that the co-brokerage agreement between Grubb & Ellis and HSA imparted rights to HSA with respect to Huntington. *See Wilmette Real Estate & Mgmt. Co.* v. *Luvisi*, 526 N.E.2d 477, 480, 172 Ill. App. 3d 232, 122 Ill. Dec. 218 (1988) ("[W]hile a broker who has procured a sale as a cooperating broker may be entitled to recover a commission from the exclusive listing broker, unless there is an express or implied contract between him and the seller, the cooperating broker has no right to recover directly from the seller."). Huntington has not shown that HSA's claim, which at this point takes the form of a broker's lien and a single invoice, is related to the contractual rights alleged by Grubb & Ellis in these proceedings. Therefore adjudication of Grubb & Ellis's claims will not result in inconsistent obligations if HSA should later decide to file suit. *See Helzberg's Diamond Shops, Inc.* v. *Valley West Des Moines Shopping Ctr., Inc.*, 564 F.2d 816, 820 (8th Cir. 1977) (defendant landlord was not prejudiced under Rule 19 where "any inconsistency in . . . obligations will result from

9

[defendant's] voluntary execution of two Lease Agreements which impose inconsistent obligations rather than from [lessee's] absence from the present proceedings"). For these reasons, HSA's joinder is not required due to the risk of inconsistent or multiple obligations as contemplated by Rule 19(a)(1)(B)(ii).

Huntington also asserts that joinder is required because HSA will not be able to protect its own interest in obtaining a commission if it is absent from this case. Def.'s Mot to Dismiss ¶ 10. Federal Rule 19(a)(1)(B)(i) provides that an entity that "claims an interest relating to the subject of the action" must be joined if its absence may "as a practical matter impair or impede the person's ability to protect the interest." As discussed above, HSA will not be prevented from protecting its interest in the commission through subsequent litigation because these proceedings will not determine HSA's rights vis-à-vis Huntington. *See Davis Cos.*, 268 F.3d at 484. Nor does Huntington assert that HSA is in privity with Grubb & Ellis. Therefore joinder is not required under Rule 19(a)(1)(B)(i).

Finally, Huntington asserts that Rule 19(a)(1)(A) requires joinder because the court "cannot accord complete relief among existing parties" without adjudicating HSA's lien interest. Def.'s Mot. to Dismiss ¶ 11. The term "complete relief," however, "refers 'only to the relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" *Davis Cos.*, 268 F.3d at 484 (quoting *Perrian* v. *O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992)). If Huntington prevails, Grubb & Ellis's claims will be completely resolved. If Grubb & Ellis prevails, then Huntington's liability to Grubb & Ellis can be determined by calculating damages based on the applicable contract or equitable legal theory. Because this dispute can be resolved as between Huntington and Grubb & Ellis, Rule 19(a)(1)(A) does not require joinder of HSA. *See id.*

For these reasons, HSA is not a "required" party under Rule 19(a).

**II.     Whether HSA is an "Indispensable" Party Under Rule 19(b)**

Because HSA's joinder is not required by Rule 19(a), the court need not consider whether HSA is an indispensable party under Rule 19(b). *See Askew*, 568 F.3d at 635. Huntington's motion, moreover, does not include any argument as to whether HSA should be joined as a plaintiff or a defendant, whether HSA's joinder is feasible, or whether HSA is an indispensable party under Rule 19(b). These omissions are fatal to Huntington's request for dismissal, given that Huntington has the burden to prove that HSA's joinder is not feasible and that the equitable considerations listed in Rule 19(b) favor dismissal. *See Cent. States, Se. & Sw. Areas Pension Fund* v. *S & H Trucking, Inc.*, No. 07-CV-5630, 2008 WL 161479, at *3 (N.D. Ill. Jan. 16, 2008) (motion to dismiss under Rule 12(b)(7) denied where defendant failed to argue that joinder was impracticable); *Askew*, 568 F.3d at 634 (noting that "[d]ismissal . . . is not the preferred outcome under the Rules").

## CONCLUSION AND ORDER

For the foregoing reasons, Huntington's motion requesting that the court dismiss the complaint or, in the alternative, order that HSA be joined as a party [#11] is denied. Huntington has fourteen days to answer the allegations in the complaint.

Dated: December 1, 2010          Entered: _____
                                        JOAN HUMPHREY LEFKOW
                                        United States District Court Judge